IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATHAN E. DISNEY          *
         *
         *
v.          *      Civil No. CCB-14-2860
         *
         *
CITY OF FREDERICK          *
         *
         ********

**MEMORANDUM**

Nathan E. Disney and Paula Bowie (collectively "plaintiffs") bring suit against the City of Frederick ("the City"), the Frederick Police Department ("FPD"), former Chief of Frederick Police Thomas Ledwell, Frederick Mayor Randy McClement, Officer B. Wolf of the Frederick Police Department, and Officer D. Sullivan of the Frederick Police Department (collectively "defendants") for various violations of Maryland law and civil rights violations under 28 U.S.C. Section 1983. This suit was filed in the Circuit Court for Frederick County on July 1, 2014. Defendants timely filed a notice of removal to this court on September 8, 2014. Defendants now have moved to dismiss, or in the alternative, to bifurcate proceedings against the City, Ledwell, and McClement.

BACKGROUND

The conduct that gave rise to these claims occurred on January 25, 2013, when Sullivan and Wolf arrested Disney for a misdemeanor trespass. In April 2008, Disney had been issued a trespass notice with respect to a property located at 1000 Heather Ridge Drive. (Complaint, ECF No. 2 ¶ 15). On the evening of January 25, 2013, he was a passenger in an automobile being driven by his girlfriend, Erin Davis. (*Id.* ¶ 9). Disney acknowledges that Davis was "driving her

1

vehicle in the vicinity of" 1000 Heather Ridge Drive. *Id.*

Disney and Davis then proceeded to 997 Heather Ridge Drive, an apartment complex across the street, where Disney's mother, Paula Bowie, resided.[1] (ECF No. 2 ¶ 9). Disney exited the vehicle, and ascended the stairs while carrying a pizza. (*Id.* ¶ 11). According to Disney, he was at this point unaware that Wolf and Sullivan had followed Davis's car and were behind him on the stairs. (*Id.* ¶ 12).

Disney alleges that he entered the apartment and was closing the door when Sullivan forced his way into the apartment. (*Id.* ¶ 14). In his statement of charges, Sullivan wrote that after running up the steps he "got to the door of apartment 'H' as it was closing. With my right hand I re-opened the door knob with a push because the door was not completely closed." (*Id.* ¶ 16). Disney alleges that Sullivan did not announce himself or provide an explanation for the entry. (*Id.* ¶ 13). Wolf then entered the apartment.

Inside the home, Disney and Bowie allege that the officers sprayed OC/Pepper spray in their eyes. (*Id.* ¶ 17). Disney also alleges that he was assaulted and sustained serious injuries to his arm, shoulder, and legs. (*Id.* ¶ 18). During the encounter, Disney "repeatedly requested to know what was happening as he had no idea why he was being assaulted." (*Id.* ¶ 17). According to Disney, he did not "act combatively or resist arrest." *Id.* Following the incident, the officers called an ambulance (*Id.* ¶ 19) and Disney was transported to Frederick Memorial Hospital where he was treated for his injuries. (*Id.* ¶ 20).

Disney later pled guilty to misdemeanor trespass, presumably for his visit to 1000 Heather Ridge Drive. (ECF No. 5 at Ex. 3). He also was charged with resisting arrest and two

---

[1] It is unclear if at the time of the incident Disney was only visiting with his mother or residing in the apartment for a longer duration. The complaint states that Disney was "visiting with his mother" and calls the location his mother's residence (ECF No. 2 ¶¶ 9–10), but also identifies the location as "his apartment" (*Id.* ¶ 11).

instances of second degree assault, but those charges were dismissed. *Id.*

Plaintiffs' complaint contains eight counts. Count one is against Sullivan and Wolf for common law false imprisonment. Count two is for common law negligence against Sullivan, Wolf, and the City. Count three is for common law assault and battery against Sullivan and Wolf. Count four is for common law intentional infliction of emotional distress against all defendants. Count five is a claim under Section 1983 against McClement, Ledwell, the City, and the FPD; count six is the same claim against Wolf and Sullivan. Count seven is a claim for a violation of the Maryland Declaration of Rights (Articles 24 and 26) against Sullivan and Wolf; count eight is the same claim against the other defendants. Plaintiffs demand $500,000 in compensatory damages and $500,000 in punitive damages.

## STANDARD

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir.2009).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in

3

the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). The plaintiff's obligation thus is to set forth sufficiently the "grounds of his entitlement to relief," offering "more than labels and conclusions." *Id.* (internal quotation marks and alterations omitted). It is not sufficient that the well-pled facts create "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning the court could draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.at 678.

## ANALYSIS

The defendants contend that the FPD is not an independent government entity capable of being sued, and the plaintiffs do not disagree. Accordingly, the court will dismiss all claims against the FPD.

The plaintiffs bring their claims against all individual defendants (Ledwell, McClement, Sullivan, and Wolf) in their personal and official capacities. Claims against individual defendants in their official capacities are simply "another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 690, n. 55 (1978). Given that the entity—the City of Frederick—is also a named party, the claims against the defendants in their official capacities will be dismissed as redundant.

The unopposed motion to bifurcate, filed by the City, Ledwell, and McClement, will be granted with respect to any claims against these defendants that remain after this opinion. *See Marryshow v. Town of Bladensburg,* 139 F.R.D. 318 (D.Md.1991). Whether any of these claims

4

are viable will be decided, if necessary, during the second stage of these proceedings.

## I. Qualified Immunity for Sullivan and Wolf

The primary issue at this stage is whether Sullivan and Wolf are entitled to qualified immunity for plaintiffs' Section 1983 claims alleging an unreasonable search based on the officers' warrantless entry into Bowie's apartment.[2]  Government actors are entitled to qualified immunity "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  In determining whether qualified immunity applies courts typically undergo a two-step analysis, assessing: (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of a defendant's alleged misconduct." *Id.* at 232 (internal citations omitted).  Courts have discretion, however, to decide which of the two prongs should be addressed first. *Id.* at 236.

"To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right," and "existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards,* 132 S.Ct. 2088, 2093 (2012) (internal quotation marks and citations omitted) (alteration in original). The determination of whether a right was clearly established is "essentially [a] legal question," to be made by the court. *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985).  Courts should "define the right in light of the specific context of the case, not as a broad general proposition . . . . that is . . . [whether it was] clear to a reasonable officer that the conduct in which he allegedly engaged was

---

[2] Plaintiffs' excessive force claim is not challenged by defendants in this motion.

unlawful in the situation he confronted." *McKinney v. Richland Cnty. Sheriff's Dep't,* 431 F.3d 415, 417 (4th Cir. 2005).

In other words, "[e]xisting precedent must have placed the statutory or constitutional question beyond debate." *West v. Murphy,* 771 F.3d 209, 213 (4th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)). "The universe of existing precedent is not unlimited. Courts 'ordinarily need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose. " *West,* 771 F.3d at 213; *see also Edwards v. City of Goldsboro,* 178 F.3d 231, 251 (4th Cir.1999).

Defendants rely on *Stanton v. Sims*, 134 S. Ct. 3 (2013) to argue that entering Bowie's residence did not violate a "clearly established" right. In this 2013 decision, the Supreme Court, per curiam, reversed the Ninth Circuit's denial of qualified immunity to a police officer defendant who entered a residence in hot pursuit of a misdemeanant. *Id.* at 5–7. The search occurred after the police were alerted to a disturbance involving a person with a baseball bat in an area known for gang violence. *Id.* at 3. When officers arrived at the scene, three men who were walking in the street quickly scattered. *Id.* at 3–4. One man, Nicholas Patrick, ran in front of the police car and toward a nearby residence that, unbeknownst to police, belonged to Drendolyn Sims. *Id.* at 4. One of the police officers, Mike Stanton, determined Patrick's behavior was suspicious and decided to detain him pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). *Id.* Stanton yelled "police" and ordered Patrick to stop, but he ignored the orders and went through the front gate enclosing Sims's yard. *Id.* Stanton at this point believed Patrick had "committed a jailable misdemeanor under California Penal Code § 148 by disobeying his order to stop" and "feared for his safety." *Id.* (internal citations omitted). Thus, Stanton made a "split-second decision" to kick open the gate surrounding Sims's yard. *Id.* (internal citation

omitted). Sims was standing behind the gate and was injured when it swung open. *Id.* Sims brought suit against Stanton.

The Court reversed the Ninth Circuit's denial of qualified immunity to Stanton on the grounds that the right to be free from police entering a home without a warrant in pursuit of a suspect who has committed a misdemeanor was not clearly established. *Id.* at 5–7. In so doing, the Court pointed out that "federal and state courts nationwide are sharply divided on the question whether an officer with probable cause to arrest a suspect for a misdemeanor may enter a home without a warrant while in hot pursuit of that suspect." *Id.* at 5. As evidence, the Court noted cases holding that in a similar situation warrantless entry was permitted, *see, e.g.*, *Middletown v. Flinchum,* 95 Ohio St.3d 43, 45, 765 N.E.2d 330, 332 (2002); cases holding that "hot pursuit" did not authorize officers to enter a home without a warrant to make an arrest for a minor offense *see, e.g. Mascorro v. Billings,* 656 F.3d 1198, 1207 (10th Cir. 2011); and cases holding that officers in similar circumstances were at least entitled to qualified immunity, *see, e.g.*, *Greiner v. Champlin,* 27 F.3d 1346, 1354 (8th Cir. 1994). The Court declined to announce a bright-line rule regarding pursuit of fleeing misdemeanants going forward.[3]

No Fourth Circuit cases address this issue. The Maryland courts have not established a clear rule on the subject. *See Dunnuck v. State*, 367 Md. 198, 286 A.2d 695, 705–06 (2001) (holding that officers' warrantless entry into a home where they observed a marijuana plant and there were no exigent circumstances violated the Fourth Amendment); *Olson v. State*, 208 Md. App. 309, 56 A.3d 576, 606 (2012) (holding that officers' warrantless entry into a home to

---

[3] The *Stanton* court also distinguished a prior case, *Welsh v. Wisconsin*, 466 U.S. 740, 750–53 (1984) which held that a search where officers entered a home without a warrant or consent and arrested a person who had recently committed a nonjailable traffic offense (driving while intoxicated), violated the Fourth Amendment. *Welsh*, however, did not involve "hot pursuit." *Stanton*, 134 S.Ct. at 6. Further, *Welsh* did not involve "immediate or continuous pursuit." *Id.*

effectuate an arrest was permitted under the community caretaking doctrine but stating that "the mere observation of a crime may provide its own exigency" to the warrant requirement); *Bittner v. Huth*, 162 Md. App. 745, 876 A.2d 157, 162 (2005) (permitting entry to arrest when in "fresh pursuit").

Given *Stanton*, which was decided in November 2013, ten months after Sullivan and Wolf entered Bowie's home, and the absence of any contrary Fourth Circuit or Maryland precedent as of January 2013, this court must grant qualified immunity to the officers for the unreasonable search claim. The Supreme Court has made clear that the law of the exigent circumstances exception to the warrant requirement in pursuit of a fleeing misdemeanant is not clearly established. Disney attempts to distinguish *Stanton* on the grounds that he was not actively "fleeing" the scene of a crime, because he was not aware that the police officers were following him, as the suspect in *Stanton* was. Nonetheless, in ruling on qualified immunity the court is required to consider the facts "from the perspective of a reasonable officer on the scene," and avoid judging the officer's conduct with the "20/20 vision of hindsight." *Graham v. Connor,* 490 U.S. 386, 396 (1989) (internal citation omitted). The question is whether the officers' actions are objectively reasonable. *Id.* at 397. Through this lens, the officers may have reasonably believed that Disney was fleeing the scene and seeking to avoid capture. Accordingly, Sullivan and Wolf are entitled to qualified immunity on the claim for warrantless entry of Bowie's home.

**II.    State law tort claims**

Plaintiffs bring claims against Sullivan and Wolf for common law false imprisonment, common law negligence, common law assault and battery, and common law intentional infliction of emotional distress. Plaintiffs also bring a negligence claim against the City and an intentional

infliction of emotional distress claim against the City, McClellan, and Sewell.

   i.   *Negligence Claim Against the City*

It is "well settled" in Maryland that municipalities "generally enjoy[] immunity against common law tort liability arising out of acts that are governmental, as opposed to acts that are private or proprietary." *Clark v. Prince George's Cnty.*, 211 Md. App. 548, 65 A.3d 785, 790 *cert. denied sub nom. Clark v. Prince George's Co*, 434 Md. 312, 75 A.3d 318 (2013) (internal citation omitted). Furthermore, "[t]he operation by a county of its police department is quintessentially governmental." *Id.* at 791 (citing *Wynkoop v. Hagerstown*, 159 Md. 194, 201, 150 A. 447 (1930)). The legislature has not waived this immunity. *See id*. The court, therefore, will grant the City's motion to dismiss plaintiffs' negligence claim.

   ii.   *Intentional Infliction of Emotional Distress Claim Against All Defendants*

The court will dismiss the intentional infliction of emotional distress claims against all defendants. Maryland law sets a high bar for claims of intentional infliction of emotional distress. *See Figueiredo–Torres v. Nickel,* 321 Md. 642, 584 A.2d 69, 75 (1991) (noting relief for a claim of intentional infliction of emotion distress should be "meted out sparingly" and "reserved for those wounds that are truly severe and incapable of healing themselves") (internal citation omitted). The tort is "rarely viable, and is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Snyder v. Phelps*, 580 F.3d 206, 231 (4th Cir. 2009) (Shedd, J., concurring) *aff'd,* 562 U.S. 443 (2011) (internal quotation and citation omitted). "To succeed on a claim for intentional infliction of emotional distress in Maryland, a plaintiff must demonstrate that the defendant intentionally or recklessly engaged in extreme and outrageous conduct that caused the plaintiff to suffer severe emotional distress." *Snyder v. Phelps,* 562 U.S. 443, 131 S.Ct. 1207, 1215 (2011) (citing *Harris v. Jones,* 281 Md. 560, 565–

66, 380 A.2d 611, 614 (1977)).

Plaintiffs have not offered evidence that suggests the actions of the officers or the municipal defendants rose to the required level of "extreme and outrageous" conduct. Although the officers' entrance into the home and the use of force they used to effectuate an arrest for trespass is in dispute and may violate the Constitution, it is not extreme and outrageous. Additionally, plaintiffs have not alleged with any specificity that they suffered severe emotional distress. Accordingly, the motions to dismiss these claims will be granted.

>    iii.    *Assault Claim Against Sullivan and Wolf*

The conduct that gave rise to these claims occurred on January 25, 2013. The suit was filed on July 1, 2014. The statute of limitations in Maryland for assault is one year. *See* Maryland Code, Cts. & Jud. Proc. § 5-105 (2014). Accordingly, the assault claim is time barred and will be dismissed.[4]

>    iv.    *False Imprisonment Claim Against Sullivan and Wolf*

False imprisonment "can only occur when there is no legal authority or justification for the arresting officer's actions." *Hines v. French*, 157 Md. App. 536, 852 A.2d 1047, 1055 (2004). The court takes judicial notice of the fact that Disney pled guilty to trespass for his conduct on January 25, 2013. (ECF No. 5 at Ex. 3). His arrest was therefore lawful. Accordingly, the false imprisonment claim will be dismissed.[5]

---

[4] Count three of the complaint also contains a claim for battery. Under Maryland law, the statute of limitations for battery is distinct from the statute of limitations for assault. *See Ford v. Douglas*, 144 Md. App. 620, 799 A.2d 448, 450–51 (2002). A claim for battery is time barred if it is not filed within three years from the date of the conduct giving rise to the claim. *See id.*; Md. Code, Cts. & Jud. Proc. § 5-101 (2014). This claim, therefore, is not barred on timeliness grounds and will be adjudicated.

[5] Defendants make the same argument with respect to the battery claim. Given, however, that the lawfulness of the extent of the force used to effectuate the arrest is in dispute, this argument is not applicable to the battery claim.

*v.*     *Remaining Tort Claims*

If McClement and Ledwell are named in any remaining state law tort claims, those claims will be dismissed because they are not supported by the factual allegations in the complaint.

The remaining tort claims against Sullivan and Wolf are battery and negligence.  Sullivan and Wolf argue that they are afforded statutory public official immunity for these claims.  The Maryland Code, Cts. & Jud. Proc. § 5-507(a)(1) (2014) provides that a municipal official, "while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority" is immune from civil liability that arises from those actions.  Plaintiffs have at least alleged that defendants acted with malice and inflicted excessive force.  (ECF No. 2 ¶¶ 47, 64, 69).  Making every inference in favor of the plaintiffs, the court will therefore deny without prejudice the motion to dismiss the remaining tort claims on immunity grounds. [6]

### III.   Maryland Declaration of Rights Claims

Plaintiffs bring claims against all defendants under the Maryland Declaration of Rights Articles 24 and 26.  Article 26 of the Maryland Declaration of Rights "protects the right to be free from unreasonable searches and seizures." *Dent v. Montgomery Cnty. Police Dep't,* 745 F.Supp.2d 648, 661 (D.Md. 2010).  As such, courts "construe the Maryland provision in conformance with constructions given to the Fourth Amendment by the Supreme Court." *Scott*

---

[6] Defendants also argue they are entitled to common law public official immunity from plaintiffs' negligence claim.  The requirements for this immunity are similar to statutory immunity.  *See Thomas v. City of Annapolis*, 113 Md. App. 440, 452, 688 A.2d 448, 454 (1997) (stating immunity is applicable where: "(1) [t]he actor [is] a public official, rather than a mere government employee or agent; (2) the conduct… occurred while the actor was performing discretionary, as opposed to ministerial, acts; and (3) the actor . . . performed the relevant acts within the scope of his official duties.  If those three conditions are met, the public official enjoys a qualified immunity in the absence of 'malice.'").  The motions to dismiss on these grounds will also be dismissed without prejudice, because plaintiffs have made allegations of malice that, generously read at this stage, defeat immunity.

*v. State,* 366 Md. 121, 782 A.2d 862, 873 n.2 (2001). Article 24 is akin to the Fourteenth Amendment and can be read in accordance with courts' interpretation of it. *Dent*, 745 F.Supp 2d at 661; *see also Dep't. of Transp. v. Armacost,* 299 Md. 392, 474 A.2d 191, 203 (Md. 1984) ("The due process clauses of Article 24 of the Maryland Declaration of Rights and the fourteenth amendment to the federal constitution have the same meaning; and we have said that Supreme Court interpretations of the federal provision are authority for interpretation of Article 24.").

As to the Maryland constitutional claims against the municipal defendants, the parties dispute whether plaintiffs have properly pled this claim pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) or under a respondeat superior theory. The motion to dismiss these claims will be denied without prejudice given that bifurcation has been granted. With respect to the Maryland constitutional claims against Sullivan and Wolf, the court will deny the defendants' motion to dismiss because the Section 1983 excessive force claim under the Fourth Amendment is proceeding.

**CONCLUSION**

For the aforementioned reasons, defendants' motion to dismiss will be granted in part and denied in part. All claims against the Frederick Police Department, Ledwell and McClement, and Sullivan and Wolf in their official capacities will be dismissed. The intentional infliction of emotional distress claim against all defendants, the assault and false imprisonment claims against Sullivan and Wolf, and the negligence claim against the City also will be dismissed. The claim against Sullivan and Wolf under Section 1983 for unlawful entry will be dismissed on the basis of qualified immunity. The remaining motions to dismiss filed by Sullivan and Wolf (for the Section 1983 excessive force claim and the remaining state law claims) will be denied. The motion to bifurcate will be granted, and the remaining claims against the remaining defendants

(under Section 1983 and Maryland Declaration of Rights) will be adjudicated at the second stage of these proceedings if necessary.

    February 19, 2015                                        /s/
Date                                                              Catherine Blake
                                                                      United States District Judge